# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| CAROLE EPSTEIN, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | Case No. _____ |
| v. ) ) | CLASS ACTION |
| ELLIE MAE, INC., SIGMUND ANDERMAN, JONATHAN CORR, KAREN BLASING, CARL BUCCELLATO, CRAIG DAVIS, A. BARR DOLAN, ROBERT J. LEVIN, MARINA LEVINSON, JEB S. SPENCER, and RAJAT TANEJA, ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. ) | |

## **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## **NATURE OF THE ACTION**

1.  This action stems from a proposed transaction announced on February 12, 2019 (the "Proposed Transaction"), pursuant to which Ellie Mae, Inc. ("Ellie Mae" or the "Company") will be acquired by EM Eagle Purchaser, LLC and EM Eagle Merger Sub, Inc., affiliates formed by Thoma Bravo Fund XIII, L.P. (collectively, "Thoma Bravo").

2.  On February 11, 2019, Ellie Mae's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Thoma Bravo. Pursuant to the terms of the Merger Agreement, Ellie Mae's stockholders will receive $99.00 in cash for each share of Ellie Mae common stock held.

3. On February 27, 2019, the Company filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. As detailed herein, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders it false and misleading. Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously, the owner of Ellie Mae common stock.

9. Defendant Ellie Mae is a leading cloud-based platform provider for the mortgage finance industry offering services which include Encompass®[1] education, certification,

---

[1] Encompass® is a digital lending platform that allows lenders and investors to engage homebuyers and efficiently originate, close, sell and purchase loans that maximize return on investments across their business from a single system of record. The platform delivers a digital mortgage experience

2

professional consulting, implementation, and business writing. The Company was founded by Limin Hu and Sigmund Anderman in August 1997 and is headquartered in Pleasanton, CA.

10. Defendant Sigmund Anderman is the Executive Chairman of the Company's Board and a director of the Company.

11. Defendant Jonathan Corr is Chief Executive Officer, President, and a director of the Company.

12. Defendant Karen Blasing is a director of the Company.

13. Defendant Carl Buccellato is a director of the Company.

14. Defendant Craig Davis is a director of the Company.

15. Defendant A. Barr Dolan is a director of the Company.

16. Defendant Robert J. Levin is a director of the Company.

17. Defendant Marina Levinson is a director of the Company.

18. Defendant Jeb S. Spencer is a director of the Company.

19. Defendant Rajat Taneja is a director of the Company.

20. The Defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and its Prospects*

21. Ellie Mae operates electronic mortgage origination networks in the United States. The Company's network and technology-enabled solutions help streamline and automate the mortgage origination process. Solutions offered by Ellie Mae include Encompass® software, a comprehensive operating system that handles key business and management functions involved in

---

that is centralized and customized for each user.

running a mortgage origination business, and serves as a gateway to the Ellie Mae Network. Through its solutions, the Company also offers services that include automated preparation of the disclosure and closing documents; electronic document management and websites and electronic connectivity. Ellie Mae is headquartered in Pleasanton, California.

22. The Company operates on very solid footing. Specifically, Ellie Mae has witnessed accelerated adoption of its solutions. Its revenues witnessed CAGR of 34.5% since 2013.

23. The Company reportedly has seen robust adoption of the Encompass® NG Lending Platform. It is aimed at offering a digital mortgage platform that enables seamless workflow along with reduction in cost for lenders and shorter closing times. Ellie Mae is also working toward its vision of a "True Digital Mortgage" platform. To support this initiative, the Company is building upgrades for the Encompass® platform with solutions like Encompass® Investor Connect and Encompass® Data Connect, which will increase visibility and collaboration between home buyers, third-party originators and loan officers. This will reportedly drive demand for the Company's platform, thereby boosting revenue.

24. Ellie Mae's customer base includes banks, credit unions, and mortgage companies. Some of its prominent customers include Wyndham Capital Mortgage, American National Bank and Peoples National Bank among others. The latest addition to the customer base is TD Bank, one of the top 10 national banks of America.

25. Apart from innovation, the Company is growing product quite inorganically through acquisition, most recently, acquiring Velocify. According to published reports, the integration is in progress but boosting revenues. Further, the Company's previous acquisitions of AllRegs and Mavent were accretive.

26. Ellie Mae, however, has had to weather the Federal Reserve's fluctuating interest rate policy.

*The Proposed Transaction*

27. On February 11, 2019, Ellie Mae's Board caused the Company to enter into the Merger Agreement.

28. Pursuant to the terms of the Merger Agreement, Ellie Mae's stockholders will receive $99.00 in cash for each share of Ellie Mae common stock held.

29. According to the press release announcing the Proposed Transaction:

> Ellie Mae® (NYSE:ELLI), the leading cloud-based platform provider for the mortgage finance industry, announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, LLC, a leading private equity investment firm, in an all-cash transaction that values Ellie Mae at an aggregate equity value of approximately $3.7 billion.
>
> Under the terms of the agreement, all Ellie Mae shareholders will receive $99.00 in cash per share. The price per share represents a 47 percent premium to the 30-day average closing share price and 49 percent premium to the 60-day average closing price as of February 1, 2019 …
>
> Ellie Mae's Board of Directors unanimously approved the definitive agreement and recommended that stockholders vote their shares in favor of the transaction. Ellie Mae's headquarters will remain in Pleasanton, California, with regional offices across the United States. Closing of the transaction is subject to approval by Ellie Mae stockholders and regulatory authorities and the satisfaction of customary closing conditions. The transaction is expected to close in the second or third quarter of 2019 and is not subject to a financial condition.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

30. The Company filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

31. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

32. The Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, J.P. Morgan Securities LLC ("J.P. Morgan").

33. As set forth in greater detail below, with respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate Adjusted Earnings Before Interest, Taxes, Depreciation, and Amortization ("EBITDA"); (ii) all line items used to calculate Unlevered Free Cash Flow; and (iii) a reconciliation of all non-GAAP ("Generally Accepted Accounting Principles") to GAAP metrics.

34. The Proxy Statement provides two sets of financial forecasts developed by Ellie Mae's management: the Management Projections and the Five-Year Projections.

35. With respect to the Management Projections, the Proxy Statement discloses the values and definitions of certain non-GAAP financial metrics: (1) Adjusted EBITDA, and (2) Unlevered Free Cash Flow, but fails to provide: (i) the value of certain line items used to calculate these non-GAAP measures, or (ii) a reconciliation to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

36. With respect to the Five-Year Projections, the Proxy Statement discloses the values and definitions of certain non-GAAP financial metrics: (1) Adjusted EBITDA; and (2) Free Cash Flow but fails to provide: (i) the value of certain line items used to calculate these non-GAAP measures, or (ii) a reconciliation to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Although the Proxy Statement defines each of the non-GAAP financial measures and discloses the line items used in each measures' calculation in accompanying footnotes, the Proxy Statement fails to provide the values of these line items and fails to reconcile each measure to its most comparable GAAP equivalent.

37. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the range of discount rates from 9.0% to 10.0% and the terminal growth rates ranging from 2.5% to 3.5%; (iii) the range of terminal values for Ellie Mae; and (iv) the fully diluted shares outstanding of Ellie Mae.

38. With respect to J.P. Morgan's Equity Research Analyst Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets for Ellie Mae; and (ii) the sources thereof.

39. The disclosure of projected financial information is material because it provides stockholders a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion, as well as the key inputs and range of ultimate values generated by those analyses, must be fairly disclosed.

40. The Proxy Statement further fails to explicate that the Company's recent decline in share price is attributable to the cyclical slowdown in United States residential mortgage origination volumes as the Federal Reserve started raising interest rates. The impact of this downturn is not isolated to Ellie Mae, but is widespread among many companies originating mortgage loans or serving mortgage originators. Accordingly, the Proxy Statement provides no detail concerning the effects of normal cycles on the Company's stock price and fails to explain that a decline in stock price may not reflect inherent weakness in the Company's model, but gyrations in the economy that occur on a regular basis and ultimately resolve themselves.

41. Further, the Proxy Statement fails to discuss the impact further regulation advocated by the Trump administration may have on the Company over the next two years.

42. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Board of Directors and Reasons for the Merger; (iii) Opinion of J.P. Morgan Securities LLC; and (iv) Management Projections.

43. The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Ellie Mae (the "Class"). Excluded from the Class are Defendants named herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

45. This action is properly maintainable as a class action.

46. The Class is so numerous that joinder of all members is impracticable. As of March, 2019, there were approximately 34.8 million shares of common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

47. Questions of law and fact are common to the Class, including, among others, whether Defendants violated the 1934 Act and whether Defendants will irreparably harm Plaintiff, and the other members of the Class, if Defendants' complained of conduct continues.

48. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.

Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

49. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications, or would substantially impair or impede those non-party Class members' ability to protect their interests.

50. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Ellie Mae

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Ellie Mae is liable as the issuer of these statements.

53. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.

54. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

55. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

56. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

57. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

58. By reason of the foregoing, the Individual Defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

59. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of Ellie Mae within the meaning of Section 20(a) of the 1934 Act as alleged herein.

62. By virtue of their positions as officers and/or directors of Ellie Mae and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and

misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

65. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

66. As set forth above, the Individual Defendants each had the ability to exercise control over, and did control a person, or persons, who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 11, 2019

**OF COUNSEL:**

**HACH ROSE SCHIRRIPA & CHEVERIE LLP**
Gregory Nespole
112 Madison Avenue
New York, NY 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028
Email: gnespole@hrsclaw.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*